1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   PUBLIC TIMBER PURCHASERS'           No.  2:19-cv-01087 MCE-KJN
     GROUP, an Oregon nonprofit
12   corporation, and SIERRA PACIFIC
     INDUSTRIES, a California stock
13   corporation,                        **MEMORANDUM AND ORDER**

14                    Plaintiffs,

15        v.

16   UNITED STATES DEPARTMENT OF
     AGRICULTURE, UNITED STATES
17   FOREST SERVICE, RANDY MOORE,
     Regional Forester, Pacific Southwest
18   Region, United States Forest Service,
     in his official capacity; and SCOTT
19   RUSSELL, Forest Supervisor, Shasta-
     Trinity National Forest, United States
20   Forest Service, in his official capacity,

21                    Defendants.

22

23        Through the present action, Plaintiffs Public Timbers Purchasers' Group ("PTPG")

24   and Sierra Pacific Industries ("SPI") (hereinafter collectively referred to as "Plaintiffs"

25   unless otherwise indicated) seek review of two administrative appeal decisions issued by

26   Defendant Randy Moore ("Moore"), in his official capacity as the Pacific Southwest

27   Regional Forester for Defendant United States Forest Service ("USFS").  Those

28   decisions pertain to Moore's structural change recomputation of the small business

                                         1

share allocation for timber sales conducted within the Trinity Market Area of the Shasta-Trinity National Forest.  In addition to Moore and the USFS, the Forest Supervisor who made the initial decision, Scott Russell ("Russell"), is also named as a Defendant, as is the United States Department of Agriculture ("USDA"), who developed the small business set-aside program ("set-aside program") in conjunction with the Small Business Administration ("SBA").[1]

Plaintiffs now move for summary judgment on grounds that neither of the subject appeals was proper in the first instance.  They go on to contend that even if they were, Moore both exceeded his authority in modifying Russell's initial decision and acted arbitrarily and capriciously in any event in making the recomputation he did.  The Federal Defendants filed their own cross-motion for summary judgment in response arguing that the decisions on appeal were entirely proper.  As set forth below, Plaintiffs' motion is DENIED, and Federal Defendants' cross-motion is GRANTED.[2]

**PROCEDURAL FRAMEWORK**

The Small Business Act, now codified at 15 U.S.C. §§ 631, et seq. ("Act") established the SBA and provides that contracts for the sale of government property be awarded to small businesses if the SBA and its "disposal agency" determine that such an award is "in the interest of assuring that a fair proportion of the total sales of [g]overnment property be made to [such] concerns."  15 U.S.C. § 644(a)(5).  Defendant USFS is the disposal agency for the sale of timber from the National Forest System.

Beginning in 1958, the USDA and the SBA developed a timber sale set-aside program to ensure that qualifying small timber purchasers be accorded the opportunity to purchase a fair share of USFS timber offered for sale.  Administrative Record ("AR") 27,

---

[1] These Defendants will be collectively referred to as the "Federal Defendants" in the remainder of this Memorandum and Order unless otherwise indicated.

[2] Having determined that oral argument would not be of material assistance, the Court submitted both motions on the briefs in accordance with E.D. Local Rule 230(g).

1  p. 1. [3]  Later, in 1971, the USDA entered into a written agreement ("1971 Agreement")

2  for the sale of national forest timber and related forest products to small businesses

3  which provided the foundation for the set-aside program now in effect.

4      The set-aside program is currently administered by the USFS, in consultation with

5  the SBA, through both the 1971 Agreement and the Forest Service Directive System,

6  which consists of the Forest Service Manual ("FSM"), as well as the applicable Forest

7  Service Handbook ("FSH") for each Region.  The FSM identifies two policy objectives in

8  implementing the set-aside program;

9
10      1.  To ensure that small business purchasers have the opportunity to purchase a fair proportion of the sales of National System timber.

11
12      2.  To administer the [set-aside program] consistently between and across the National Forests within each Region.

13  FSM § 2439.02.

14      The FSM goes on to generally vest Forest Supervisors with the duty, as the so-

15  called "Responsible Official" for administering the set-aside program "in accordance with

16  applicable policies and procedures," as contained within the FSH.  Id. at §§ 2439.04d,

17  2439.1.  In that role, the FSH specifies that Forest Supervisors are responsible, among

18  other things, for reallocating the proportion of timber sales offered to small businesses in

19  the event of a so-called "structural change."  Such a change occurs when a "small or

20  large business firm that purchased at least 10 percent of the total sawlog volume during

21  the last recomputation[4] period discontinues operations or changes its size status through

22  the sale or purchase of manufacturing capacity."  FSH, § 90.5(8)(b).

///

23      When a structural change is identified, the Forest Supervisor "must recompute[]

24

25      [3] All citations to the Administrative Record refer, as the parties do, to the document number assigned by Defendants in the Administrative Record Index attached as Ex. 1 to the Declaration of Tim Howard submitted along with the Record, and not to Bates numbers assigned to each page of the Record.

26

27      [4] A "recomputation" is the "process of computing the small business share for a market area," with market area being the "basic unit" of administration for the set-aside program, and "small business share" is defined as the "amount of timber that small businesses are expected to purchase within a market area." Id. at § 90.5(8), (4), (9).

28

1   the small business share in accordance with the procedure set out in [FSH § 91.22b]."

2   Id.  That procedure is "designed to provide small business firms the opportunity to

3   maintain their historical share when a firm changes size" in order to provide an

4   "adjustment of shares to reflect changes that may develop."  Id.   The FSH accordingly

5   mandates that the applicable small business share be recomputed three years after a

6   structural change occurs based on the sawlog purchase history for that three-year

7   period.  Id.  Structural change recomputations are subject to a lower limit of one-half of

8   the "original base share," which is the original small business share established for each

9   market area under the 1971 Agreement, and an upper limit of 80 percent of total sawlog

10  volume of the area.  Id.

11       The FSH directs the Forest Supervisor to consult with the SBA both as to whether

12  a structural change has occurred and for any resulting recomputation of the small

13  business share based on purchase history, with a formula provided for the necessary

14  calculation.  Id. at § 91.17, 91.22b.  If the Forest Supervisor and the SBA disagree as to

15  the small business share recomputation, the FSH provides for referral of the matter to

16  the Regional Forester, who may establish a small business share that differs from the

17  recomputation formula contained within the FSH.  Id. at § 91.17.

18       Recomputation decisions, once finalized, may be appealed by the timber sales

19  purchasers, or their representatives, affected by the decision.  36 C.F.R. § 223.118(c),

20  (h)(1).   Where, as here, the Forest Supervisor issues the recomputation decision, the

21  Regional Forester is the "Appeal Deciding Officer" responsible for adjudicating the

22  appeal.   Id. at § 223.118(d).  If the Regional Forester is responsible for the underlying

23  decision, however, the Chief of the USFS, or his designee, becomes the Appeal

24  Deciding Officer.   The Appeal Deciding Officer is vested with the authority to "affirm or

25  reverse," in whole or in part, the recomputation decision.  Id. at § 223.118(j)(3).

26  ///

27  ///

28  **FACTUAL BACKGROUND**

4

1

2          Between approximately 2010 and 2015, the Trinity River Lumber Company had

3   purchased some 94 percent of sawlog volume obtained from the Trinity Market Area of

4   the Shasta-Trinity National Forest.  AR 21.  As a small business, this purchase volume

5   had established a 74 percent small business share for the Trinity Market Area.  On or

6   about May 28, 2015, however, Trinity River Lumber purchased an additional mill and

7   thereby ceased to qualify as a small business concern.  Id.  Thereafter, on March 31,

8   2016, the Forest Supervisor for the Shasta-Trinity National Forest, Defendant Scott

9   Russell, issued a Pre-Decision Notice of SBA Structural Change announcing that after

10  consultation with the SBA, he determined that Trinity River Lumber's purchase made it

11  necessary to recompute the applicable small business share.  Id.   Russell subsequently

12  revealed, on May 13, 2016, his methodology in undertaking that recomputation,

13  indicating that purchase and harvest date from October 1, 2015, through September 30,

14  2018 would be employed, and that the resulting new figure would take effect on October

15  1, 2018.  AR 20.

16         Russell ultimately proposed, by written notice issued on October 30, 2018, a new

17  small business share of 67 percent.  He did this by limiting the change from the

18  previously established 74 percent share to one-half of the original base share of 14

19  percent, a 7 percent reduction.  AR 9.  Russell invited qualifying timber sale purchaser

20  interested parties to review his recommendation and provide any written commentary by

21  November 29, 2018, after which time a decision would be forthcoming.

22         Both the SBA and Franklin Logging, a small business concern that expressed

23  interest in purchasing timber from the Trinity Market Area, submitted comments in

24  support of Russell's proposal within the requisite period.  Plaintiff PTPG, a regional trade

25  organization representing large forest produce manufacturers that purchase USFS

26  timber, also commented, as did Plaintiff SPI, a large timber purchase and member of

27  PTPG.

28         Both SPI and PTPG asserted that Russell erred in calculating the new proposed

5

1   business share, since the limitation to one-half of the original base share formula he

2   relied upon applied only to periodic five-year recomputation and not to the recomputation

3   needed after an intervening structural change.  AR 8, 15.  In a structural recomputation,

4   according to Plaintiffs, the only limit that applied was that under FSH § 91.22b, such that

5   the new share would be not less than one-half of established base share of 14 percent,

6   or 7 percent.  In the Trinity Market Area, because there had been virtually no timber

7   sales during the applicable control period (only one small sale occurred to a large

8   company), no percentage was assigned to small business interests, Plaintiffs argued

9   that a zero percentage allocation therefore had to be applied for small purchasers,

10   bringing the new percentage down to the 7 percent minimum rather than the 67 percent

11   figure advocated by Russell.

12          On December 10, 2018, Deputy Forest Supervisor Terri Simon-Jackson issued a

13   revised decision concluding that the correct small business share for the Trinity Market

14   Area was in fact 7 percent as advocated by Plaintiffs.  AR 5.  Ms. Simon-Jackson

15   informed timber purchasers and interested parties of their right to appeal the decision

16   pursuant to 36 C.F.R. § 223.118 and identified the Regional Forester as the Appeal

17   Deciding Officer.  Id.  This caused the SBA and Franklin Logging to submit notices of

18   appeal on December 20, 2018 and January 7, 2019, respectively.  AR 3, 4.

19          While the SBA tacitly acknowledged that application of FSH § 91.22b would result

20   in the 7 percent small business allocation specified by Ms. Simon-Jackson, it

21   nonetheless claimed that using that figure would be a "total disservice to the entire small

22   business community."  AR 3.  The SBA pointed out that because there was only one

23   open sale, and because that sale occurred only in the last six-month segment of the

24   referenced three-year period (during four of the remaining five six-month segments, the

25   sales that did occur were excluded from consideration and in the other no sales occurred

26   at all) the opportunity for small businesses to quantify their purchasing history was

27   "extremely limited".  Id.  Rather than reduce the available small business share so

28   drastically from 74 to 7 percent, the SBA instead suggested the "middle range" of 44

1    percent, a figure between the 7 percent minimum and the 80 percent maximum allowed

2    for structural change recomputations under the FSH.

3          Franklin Logging, like the SBA, argued that the reduction proposed by the Deputy

4    Forest Supervisor would "fall well short" of the Timber Set Aside Program's objective in

5    giving small businesses the "opportunity to acquire [a] fair share of federal contracts."

6    AR 4.  Franklin claimed that dropping the small business share to 7 percent would

7    "severely limit our ability to purchase timber sales in the Trinity Market area."  Id.  It

8    accordingly advocated that Scott Russell's initial recommendation of 67 percent be

9    adopted by the Regional Forester on appeal.

10          On February 13, 2019, Regional Forester Randy Moore issued essentially

11    identical decisions as to both appeals.  While agreeing that the Forest Supervisor's small

12    business recomputation was technically made in compliance with the provisions of the

13    FSH, Moore agreed with the concern voiced by both appellants concerning the "dramatic

14    drop" from 74 percent to 7 percent in small business share that the Forest Supervisor's

15    decision entailed.  Finding that he had the discretion to adjust the 7 percent figure

16    upward under FSM 2439.04c(3) and FSH § 91.17, Moore found as follows:

17                It is my responsibility to ensure that small business timber
                 purchasers have the opportunity to purchase a fair proportion
18                of sales of National Forest System timber.  The 7 percent, in
                 my opinion, will not provide a fair share of timber to small
19                businesses and the 7 percent is well below historical SBA Set-
                 Aside timber offerings and will not be in the best interest of the
20                Forest Service and small businesses nor in the spirit of the
                 SBA Set-Aside program (Forest Service Manual ("FSM")-
21                Timber Management, 2439.01(1), 2439.02(1).

22    AR 1, 2

23          After examining the underlying record, Moore determined, in the best interest of

24    both the SBA and the Forest Service that the small business share of the Trinity Market

25    Area should be increased from 7 percent to 44 percent, effective October 1, 2018, on

26    grounds that 44 percent is "a reasonable middle range for the small business share

27    ///

28    between the 7 percent floor and the 80 percent ceiling set forth in FSH 2409.18, 91.22b."

1    Id.

2          Plaintiffs filed the present lawsuit challenging that determination on June 14,

3    2019.  ECF No. 1.  The cross-motions for summary judgment presently before the Court

4    for adjudication were commenced on March 27, 2020, by the filing of Federal

5    Defendant's Motion for Summary Judgment (ECF No. 36), followed by Plaintiffs'

6    Opposition and Cross-Motion on April 24, 2020 (ECF No. 38), and both motions have

7    been fully briefed.

8

9                              **STANDARD**

10

11         The Administrative Procedure Act ("APA") governs a court's review of agency

12   action taken under the set-aside program.  5 U.S.C. §§ 701, et seq.; see Duke City

13   Lumber Co. v. Butz, 382 F. Supp. 362 (D.D.C. 1974).

14         Summary judgment is an appropriate procedure in reviewing agency decisions

15   under the dictates of the APA.  See, e.g., Northwest Motorcycle Assn. v. U.S. Dept. of

16   Agric., 18 F.3d 1468, 1471-72 (9th Cir. 1994).  Under Federal Rule of Civil Procedure 56,

17   summary judgment may be had where, "viewing the evidence and the inferences arising

18   therefrom in favor of the nonmovant, there are no genuine issues of material fact in

19   dispute."  Id. at 1472.  In cases involving agency action, however, the court's task is

20   governed by the judicial review provisions of the APA, which requires a court to hold

21   unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of

22   discretion, or not otherwise in accordance with law," or adopted "without observance of

23   procedure required by law."  5 U.S.C. § 706(2); Native Ecosystems Council v. U.S.

24   Forest Service, 418 F.3d 953, 960 (9th Cir. 2005).   A decision is arbitrary and capricious

25   if the agency has "relied on factors which Congress has not intended it to consider,

26   entirely failed to consider an important aspect of the problem, offered an explanation for

27   its decision that runs counter to the evidence before the agency, or is so implausible that

28   it could not be ascribed to a difference in view or the product of agency expertise."

                                          8

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.Co., 463 U.S. 29, 43 (1983).   In reviewing an agency decision, the court must be "searching and careful" (Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 858-59 (9th Cir. 2005); Or. Natural Res. Council v. Lowe, 109 F.3d 521, 526 (9th Cir. 1997)) but may not substitute its own judgment for that of the agency.  Ocean Advocates, 361 F.3d at 118 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)).  An agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  Motor Vehicle Mfs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983) (internal quotations omitted); see also Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989).

In reviewing an agency's actions, then, the standard to be employed is decidedly deferential to the agency's expertise.  Salmon River v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994).  Although the scope of review for agency action is accordingly limited, such action is not unimpeachable.  The reviewing court must determine whether there is a rational connection between the facts and resulting judgment so as to support the agency's determination.  Baltimore Gas and Elec. v. NRDC, 462 U.S. 87, 105-06 (1983), citing Bowman Trans. Inc. v. Arkansas-Best Freight Sys. Inc., 419 U.S. 281, 285-86 (1974).  In order to be arbitrary and capricious, there must be "a clear error of judgment" on the part of the agency.  League of Wilderness Defenders v. U.S. Forest Serv., 549 F.3d 1211, 1215 (9th Cir. 2006).   Plaintiffs bear the burden of proof in making the requisite showing in that regard.  Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976).

///

///

///

///

///

1

**ANALYSIS**

2

3          **A.     SBA Has Standing To Appeal**

4          In moving for summary judgment, Plaintiffs first posit the procedural argument the

5   SBA was not permitted to appeal the Regional Forester's recomputation decisions.

6   According to Plaintiffs, because the regulation governing the administrative appeal

7   process for the set-aside program only specifically identifies the SBA as an "interested

8   party" entitled to comment on USFS small business allocation determinations and

9   resulting appeals, the SBA necessarily cannot itself appeal a decision since that role is

10  limited to either a timber sale purchaser or its representative.   The Court is unpersuaded

11  by Plaintiffs' position.

12          The regulation in question, 36 C.F.R. § 223.118, separately defines the entities

13  that may comment on an appeal as an interested party, and those that are entitled to

14  actually file an appeal.  The applicable subsection, (c), is entitled "Who may appeal <u>or</u>

15  file written comments as an interested party." (emphasis added).  The regulation goes on

16  to define those entities who may appeal:

17                          (1)     Only timber sale purchasers, or their representatives,
                        who are affected by recomputations of the small business
18                      share of timber sales as described in paragraph (a) of this
                        section and who have submitted predecisional comments
19                      pursuant to paragraphs (b)(1) of this section, may appeal
                        recomputation decisions under this section or may file
20                      comments as an interested party.

21  36 C.F.R. § 223.118(c)(1)

22          Consequently, an appellate right is initially vested on timber sales purchasers or

23  their representatives, provided they have been "affected" by a recomputation.  The

24  regulation goes on to further require, once that fundamental showing has been made,

25  that the entity also "have submitted predecisional comments," a right which

26  subdivision (b)(1) accords to the same group by using the definition contained in (c)(1).

27  The subdivision ends by specifying that the same group of timber sale purchasers or

28  their representatives can also file written comments to appeal as an interested party.

10

1    Plaintiffs focus on subdivision (c)(2), which defines "interested parties" as

2    including not only timber purchasers or their representatives but also the SBA, to argue

3    that the regulation's specific inclusion of the SBA as an interested party means that the

4    SBA is not also entitled to appeal because it is not similarly included within the definition

5    of an appealing party.  The regulation provides:

6            (2)    Interested   parties   are   defined   as   the   Small
         Business Administration and those timber sale purchasers, or
7        their representatives, who are affected by recomputations of
         the small business share of timber sales as described in
8        paragraph (a) of this section and who have individually, or
         through an association to which they belong, submitted
9        predecision comments pursuant to paragraph (b)(1) of this
         section.
10

11   36 C.F.R. § 223.118(c)(2).

12    Plaintiffs' contention that the two sections are mutually exclusive with respect to

13   the SBA's role in this matter does not withstand careful scrutiny.  The SBA's appeal

14   makes it clear that in doing so it represents small timber purchasers affected by the

15   Trinity Market Area recomputation:  "The SBA, representing the small business

16   community, is adversely affected by the dramatic drop from the current small business

17   share of 74 percent to 7 percent."  AR 3.  Moreover, the SBA's authorizing statute, at

18   15 U.S.C. § 631 (a), directs it to "aid, counsel, assist, and protect insofar as possible, the

19   interests of small business concerns."  And, of course, the regulation governing the

20   administrative appeal process itself, as set forth above, permits appeals by either timber

21   sale purchasers affected by recomputation decisions "or their representatives."

22   36 C.F.R. § 223.118(c)(1).  There can be no question that the SBA is a representative of

23   such purchasers in this context.

24    The fact that the definition of "interested parties" happens to also specifically

25   name the SBA does not change that conclusion.  First, the definition of "interested

26   parties" also includes timber purchaser representatives so the SBA qualifies as such

27   both because it is enumerated as a listed party and because it is acting in this particular

28   case as a representative for timber sale purchasers.  Second, subdivision (b)(1), which

11

1   spells out who may comment upon the Forest Supervisor's initial decision here to reduce

2   the small business percentage to 7 percent, does so by reference to the definition

3   contained in (c)(1), a definition which unlike (c)(2), does not include the SBA.

4   Consequently, to be entitled to submit such predecisional comments the SBA had to

5   qualify as a timber purchase representative.  The record is clear that the SBA did

6   comment initially on the Forest Supervisor's initial recommendations in this matter (see

7   AR 7), and it was entitled to do so under § 223.118(a) only if it fell within the definition

8   set forth by (c)(1), a definition which includes an entity acting as a representative but

9   does not specifically name the SBA as such a representative.

10       Plaintiffs have not disputed the SBA's authority to comment on the Forest

11   Supervisor's predecisional notice, yet that authority undermines their ability to now argue

12   that the SBA cannot also appeal.  Significantly, too, the SBA cannot qualify as an

13   interested party under subdivision (c)(2) unless it also submitted predecisional

14   comments, and it could do so under (b)(1) and (c)(1) only as a timber purchaser

15   representative.  Accordingly, the Court finds the SBA's appeal to be authorized.[5]

16       **B.    Franklin's Appeal Was Timely**

17       Even if the SBA's appeal of the Regional Forester's recomputation decision was

18   not authorized under applicable USFS regulations, a conclusion which the Court rejects

19   as indicated above, dismissing the instant appeal in its entirety also requires a

20   determination that the second appealing party, Franklin Logging, was not entitled to

21   appeal.  Plaintiffs' only argument in that regard is that Franklin's appeal was untimely

22

23       [5] The Court notes that the Federal Defendants have also made standing arguments in their cross-motion for summary judgment.  They argue that Franklin Logging failed to demonstrate any harm

24   stemming from the Regional Forester's decision by not identifying any specific timber sales upon which they could not bid.  Given Franklin's status as a small business, its purchase of timber from the Trinity

25   Market Area in the past, and its claim that decreasing the small business percentage would impact its ability to do so in the future (see AR 17) the Court concludes that it had the requisite standing to appeal

26   the decision.  Importantly, too, by adjudicating Franklin's appeal, the Regional Forester tacitly concurred with that conclusion.  Additionally, the Court further concludes that both Plaintiff SPI, as a large timber

27   purchaser which has regularly participated in Trinity Market Area timber sales in the past and intends to do so in the future (see Decl. of Robert Hoover, ECF No. 39-1), and Plaintiff PTPG, which was organized in part to protect the interests of its members from undue preference by the USFS to small timber purchasers

28   (see Decl. of Mark Pawlkicki, ECF No. 39-2), have standing to pursue the present judicial appeal.

1  because, although submitted in accordance with the time frame explicitly provided in the

2  Forest Supervisor's revised predecisional notice of December 10, 2018 (AR 5), it

3  nonetheless was not, according to Plaintiffs, filed within twenty days of the notice of said

4  decision.

5          The December 10, 2018 notice provided the following directive as to any appeal

6  therefrom:

7              Any written Notice of Appeal of this decision must be fully
               consistent with 36 CFR 223.118(f), Content of Notice of
8              Appeal, must include reasons for appeal and must be
               postmarked by January 09, 2019 which is 30 days from the
9              date of this notice of decision.

10 AR 5.

11         Subdivision (f) of the statute provides detailed instructions as to the specific

12 information a notice of appeal must provide, and the above paragraph goes on to

13 establish a date certain (January 9, 2019), as to when an appeal must be postmarked in

14 order to be considered timely.  The Forest Supervisor identified that date as 30 days

15 from the date of her December 10, 2018 notice of decision.

16         While the notice of decision refers specifically to subdivision (f) of the regulation

17 as stated above, nowhere does it point to subdivision (e), which requires, in apparent

18 odds with the notice, that any appeal be filed "within 20 days of the date of the notice of

19 the decision."  36 C.F.R. 223.118(e).  According to Plaintiffs, because Franklin Logging's

20 appeal was filed on January 7, 2019, within the time-period specified within the Forest

21 Supervisor's notice of decision but outside the 20-day deadline established by

22 § 223.118(e), its appeal must necessarily be considered untimely.  Plaintiffs point to

23 language elsewhere in the regulation stating that is both "the responsibility of those filing

24 an appeal to file the notice of appeal by the end of the filing period," with that date being

25 "not extendable."  36 C.F.R. § 223.118(g)(3), (4).  Plaintiffs thereby argue that even

26 though Franklin Logging followed the explicit filing instructions contained in the Notice of

27 Appeal itself, it should have realized that the Forest Supervisor's computation was

28 ///

13

1   erroneous.  Franklin's failure to do so in Plaintiffs' view bars the present appeal from

2   proceeding given its contention that the SBA's appeal was improper as well.

3       This Court finds Plaintiffs' position as to the timeliness of Franklin Logging's

4   appeal utterly unpersuasive.  It ignores the USFS' own role in establishing the filing

5   deadline while blaming Franklin Logging for simply having followed the instructions it

6   was given in the notice of decision itself.  First, to the extent that Plaintiffs claim that

7   Franklin Logging had "responsibility" for filing a notice of appeal "by the end of the filing

8   period' under subdivision (g)(3), and although Plaintiffs place great stock on the fact that

9   that period "is not extendable" under (g)(4), the USFS was tasked with specifying the

10  end of the 20-day filing period set forth in subdivision (e).  The regulation clearly states

11  that "[t]his date must be specified in the notice of decision…"  36 C.R.R. § 223.118(e).

12      Here, no 20-day deadline was provided under subdivision (e).  Instead, the Forest

13  Supervisor established a different, 30-day deadline and calculated the applicable filing

14  date of January 9, 2019 in the subject notice of decision.  Franklin Logging was

15  unquestionably entitled to rely on that date.[6]  Even if the USFS erred in establishing the

16  date it did, Franklin Logging cannot be held accountable for that mistake when it did

17  exactly what the notice of decision instructed it to do.  Franklin's appeal was timely under

18  those circumstances.

19      **C.    The Regional Forester did not exceed his authority in modifying the Forest Supervisor's initial decision.**

20

21      Having disposed of Plaintiffs' procedural arguments for dismissing this lawsuit, the

22  Court now moves to the substantive grounds advanced.  The Court finds those

23  arguments no more persuasive.

24      Plaintiffs first advance a claim that the Regional Forester's decision to modify the

25  Forest Supervisor's structural recomputation exceeded his authority under the applicable

26

27  [6] It is also significant to note that the USFS accepted Franklin Logging's appeal.   In announcing his February 13, 2019 decision as to that appeal, Regional Forester Randy Moore described Franklin's January 7, 2019 appeal as "timely".  AR 1.

28

1    regulations.  That argument is both tortured and illogical.  It is based on the regulation's

2    directive that "[t]he Appeal Officer may affirm or reverse the Responsible Official's

3    decision, in whole or in part."   36 C.F.R. § 223.118(j)(3).[7]  According to Plaintiffs,

4    because the Regional Forester "modified" the Forest Supervisor's decision, that action

5    runs counter to the directive that he only "affirm or reverse" that decision, despite the fact

6    that such affirmance or reversal may specifically be either "in whole or in part."

7            Here, the Regional Forester affirmed the appealed decision to the extent that it

8    changed the small business share applicable to the Trinity Market Area, but reversed the

9    decision insofar as it established a 7 percent small business share.  Instead, because

10   the historical small business share for the Area had been 74 percent, and given the very

11   limited data upon which the drastic reduction of that share down to 7 percent had been

12   premised (only one qualifying sale in the previous three-year period had been utilized),

13   the Regional Forester exercised his discretion[8] and found that a midpoint of 44 percent,

14   approximately halfway between the two figures, better served the interests of all

15   involved.

16           It makes no sense to argue, as Plaintiffs do, that the Regional Forester could

17   partially affirm or reverse the appealed decision, but lacked the authority to modify it.

18   The result under either scenario is to change the small business share, so it is a

19   distinction without a difference.[9]  The Court accordingly rejects Plaintiff's argument that

20   the Regional Forester exceeded his authority in modifying the structural recomputation.

21   ///

22   _____

23       [7] There is no dispute that "Appeal Officer" and "Responsible Official" refer here to the Regional Forester and the Forest Supervisor, respectively.

24       [8] While Plaintiffs also argue that the Regional Forester, when acting in his role as an Appeal Officer, lacks any discretion in reaching his decision, nothing in either the FSM or FSH support that

25   contention, which the Court therefore rejects.  The Court further rejects any assertion that the language of 36 C.F.R. § 223.118(j)(3), which permits the Appeal Officer to affirm or reverse, in whole or in part, the

26   Responsible Official's underlying structural recomputation, limits his discretion to modify that decision.

27       [9] The Court accordingly rejects Plaintiffs' argument that permitting the Regional Forester to "modify" a small business share on appeal, as opposed to partially affirming or reversing the underlying

28   decision, represents a "significant" change to the set-aside program for which an opportunity to comment should have been provided before implementation pursuant to 36 C.F.R. § 223.118(l)

1
2

### D.      The Regional Forester's Decision Was Neither Arbitrary Nor Capricious

Plaintiffs next claim that even if the Regional Forester had the ostensible authority to act as he did, Moore's decision to increase the small business share from 7 to 44 percent was arbitrary and capricious and cannot withstand APA scrutiny on that basis.  This is because, according to Plaintiffs, the Regional Forester's decision to use the midpoint figure advocated by the SBA lacked the necessary "rational connection" with the actual facts before him for consideration.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  Pointing to the Act's dictate that "a fair proportion of the total sales of Government property be made to small business concerns" (14 U.S.C. § 644(a)(5)j), Plaintiffs claim that the Regional Forester's decision on appeal failed to assure any such fair percentage and instead constitute a "clear error of judgment" that "must be held unlawful and set aside."  Pls.' Mot., ECF No. 37, 13:13-14.  They maintain that his "proffered explanation is not the product of agency expertise" because "it capriciously acquiesces, without critical analysis, to the SBA's equally arbitrary [midpoint] proposal."  Id. at 19-20.  Again, the Court disagrees.

Plaintiffs themselves concede that the Forest Supervisor's ultimate recomputation, while technically correct, was based on only one qualifying timber sale within the three years following the structural change brought about by Trinity River Lumber's 2015 change in small business status.  That sale, at 2,261 MBF, was both relatively small in size and occurred during the final six-month segment of the relevant three-year period, with sales from the other five segments either excluded from consideration or producing no sales whatsoever.  In appealing the resulting recomputation, Franklin Logging argued that this "very limited transactional evidence" failed to justify "the long term and lasting negative impact to the small business community" that the Regional Forester's decision to cut the small business share from its previous 74 percent figure to a drastically reduced 7 percent would represent.  AR 4. The SBA concurred, stating that the decision would be both "unfair and detrimental to

1   the small business community" under such circumstances.  AR 3.  The Regional

2   Forester ultimately agreed, finding the 7 percent figure to be "well below historical SBA

3   Set-Aside timber offerings," not in the SBA's spirit of ensuring that small businesses be

4   afforded at least the opportunity to purchase a fair proportion of National Forest Service

5   timber, and accordingly not in the best interest of either the USFS or small businesses.

6   AR 1, 2.

7        The balancing of needs and objectives that the Regional Forester's decision on

8   appeal represents is hardly arbitrary and capricious.  Indeed, the FSH itself recognizes

9   the balancing required by providing that structural changes are "designed to provide

10  small business firms the opportunity to maintain their historical share" while at the same

11  time providing "a reasonably rapid adjustment of shares to reflect changes that may

12  develop."  FSH § 91.22b.  While Plaintiffs appear to fault the Regional Forester for not

13  basing his decision on more evidence, Moore expressly recognizes that the evidence

14  prescribed for making the decision was scant and did not, in his estimation, justify the

15  precipitous decline in small business opportunity that would result from that limited data's

16  rote application.  Although Trinity River Lumber had purchased most of the timber

17  available in the Trinity Market Area before it ceased to qualify as a small business,

18  providing other small business concerns like Franklin Logging the opportunity to

19  compete for future sales unquestionably comports with the objectives of both the Act and

20  the USFS.  Balancing the competing interests at stake, and adopting a midpoint

21  compromise between the prior share reserved for small business competitors and the

22  figure derived though a strictly formulaic structural change recalculation, was not clearly

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  erroneous.  The Regional Forester's decision consequently withstands APA scrutiny and

2  Plaintiffs' appeal fails.[10]

3

4  **CONCLUSION**

5

6      Based on the foregoing, the Federal Defendants' Cross Motion for Summary

7  Judgment  (ECF No. 38) is hereby GRANTED, and Plaintiffs' Motion for Summary

8  Judgment (ECF No. 37) is DENIED.  The Court concludes that the Regional Forester's

9  February 13, 2019 decisions, which adjudicated appeals lodged by the SBA and by

10  Franklin Logging on December 20, 2018 and January 7, 2019, respectively, were proper.

11  The Clerk of Court is directed to enter judgment in favor of the Federal Defendants

12  accordingly.

13      IT IS SO ORDERED.

14  Dated:  January 19, 2022

15

16  _____

    MORRISON C. ENGLAND, JR.

17  SENIOR UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24  _____

    [10] With respect to whether an APA violation occurred, the Court recognizes the Federal
    Defendants' even more fundamental argument that Plaintiffs have failed to identify any underlying

25  statutory violation upon which APA review can proceed.  See, e.g., El Rescate Legal Servs., Inc. v.
    Executive Office of Immigration Review, 959 F.2d 742, 753 (9th Cir. 1991) ("There is no right to sue for a

26  violation of the APA in the absence of a relevant statute whose violation forms the legal basis for
    complaint.").  According to Plaintiffs, the requisite statutory basis is derived both from the Act, which

27  requires that a "fair proportion" of the sale of government property be allocated to small business concerns
    at 15 U.S.C. § 644(a)(5), and USFS implementing regulations which spell out how to accomplish that

28  objective in the context of timber sales.  For purposes of this appeal the Court concludes that is sufficient
    for APA purposes.